UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

IN RE: SHIRLEY DOUGLAS                                          CASE NO. 09-13893-DWH

TERRE M. VARDAMAN, Trustee
FOR THE ESTATE OF SHIRLEY DOUGLAS                               PLAINTIFF

VERSUS                                                          ADV. PROC. NO. 10-01187-DWH

RICHARD B. SCHWARTZ, SCHWARTZ
AND ASSOCIATES, P.A., and
VANN F. LEONARD                                                 DEFENDANTS


SHIRLEY DOUGLAS                                                 PLAINTIFF

VERSUS                                                          ADV. PROC. NO. 11-01018-DWH

RICHARD B. SCHWARTZ and
SCHWARTZ AND ASSOCIATES, P.A.                                   DEFENDANTS


OPINION

On consideration before the court are the Amended Joint Motion for Joint Partial Summary Judgment filed on behalf of the debtor, Shirley Douglas, ("Douglas"), and Terre M. Vardaman, Trustee for the Estate of Shirley Douglas, ("Trustee"); as well as, the Motion for Partial Summary Judgement filed by Douglas; responses to said motions having been filed by the defendants, Richard B. Schwartz, ("Schwartz"), and Schwartz and Associates, P.A., ("Schwartz, P.A."); and the court, having heard and considered same, hereby finds as follows, to-wit:

I.

The Court has jurisdiction of the parties to and the subject matter of these two adversary proceedings pursuant to 28 U.S.C. §1334 and 28 U.S.C. §157. These are core proceedings as defined in 28 U.S.C. §157(b)(2)(A), (E), and (O).

II.

On June 28, 2007, Douglas retained Schwartz, P.A., to represent her in a personal injury cause of action stemming from an automobile accident. Douglas executed a professional services agreement setting forth the terms of the engagement.

Because of her deteriorating financial circumstances, Douglas filed a voluntary petition for relief pursuant to Chapter 13 of the United States Bankruptcy Code. Terre M. Vardaman was appointed as the Trustee of the bankruptcy estate.

On March 23, 2010, Schwartz successfully negotiated a settlement of the personal injury cause of action for the total sum of $500,000.00, which was acceptable to Douglas. Schwartz then employed Attorney Vann F. Leonard, ("Leonard"), to assist Schwartz, P.A., in obtaining approval of the settlement by the bankruptcy court. Pursuant to motions filed by Leonard, the following orders were entered in Douglas' bankruptcy case, to-wit:

(a) An agreed order, dated June 3, 2010, approving the employment of Schwartz, P.A., as special counsel nunc pro tunc, as well as, approving the contingency fee contract previously executed between Douglas and Schwartz, P.A.

(b) An agreed order approving the compromise and settlement of Douglas' personal injury claim in the total sum of $500,000.00, as well as, approving the compensation and reimbursement of expenses for Schwartz, P.A., in the sum of

$172,414.68. This order, which was also dated June 3, 2010, further provided that "all excess settlement proceeds after payment of legal fees and reimbursement of expenses shall be tendered to the Chapter 13 Case Trustee for distribution to timely file unsecured proofs of claim, or disbursed by Vann F. Leonard, attorney for Schwartz and Associates, at the direction of the Chapter 13 Trustee, all without further order of this court."

Schwartz tendered the $500,000.00 settlement check to Leonard so that the disbursements could be made in keeping with the provisions of the aforementioned order. Leonard thereafter disbursed $172,414.68, to Schwartz, P.A., in payment of the contingency fee and reimbursement of expenses. However, he failed to distribute the balance of the settlement proceeds in the sum of $327,585.32 to the Trustee and apparently embezzled these funds for his own use. On February 24, 2011, Leonard entered a plea of guilty in the United States District Court for the Northern District of Mississippi to one count of embezzlement from a bankruptcy estate.

Douglas initially filed her lawsuit against Schwartz and Schwartz, P.A., in the Circuit Court for the First Judicial District of Hinds County, Mississippi, seeking the recovery of the aforementioned settlement proceeds plus additional actual and punitive damages. The cause of action was removed to the United States District Court for the Southern District of Mississippi, and then transferred to this court where it was assigned Adversary Proceeding No. 11-01018. As the representative of Douglas' bankruptcy estate, the Trustee filed a cause of action in this court against Schwartz, Schwartz, P.A., and Leonard, seeking the recovery of the settlement proceeds as property of the bankruptcy estate, and it was assigned Adversary Proceeding No. 10-01187. The two proceedings have been administratively, but not substantively, consolidated for trial.

Through an earlier order, Schwartz was directed to return the $172,414.68, that he had received as his compensation and reimbursement of expenses, so that these funds could be held in the registry of this court pending the outcome of these proceedings.

Both Douglas and the Trustee filed their motions for partial summary judgment, asserting that they were entitled to relief as a matter of law.

### III.

Summary judgment is properly granted when pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Bankruptcy Rule 7056; Uniform Local Bankruptcy Rule 18. The court must examine each issue in a light most favorable to the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Phillips v. OKC Corp.*, 812 F.2d 265 (5th Cir. 1987); *Putman v. Insurance Co. of North America*, 673 F.Supp. 171 (N.D. Miss. 1987). The moving party must demonstrate to the court the basis on which it believes that summary judgment is justified. The nonmoving party must then show that a genuine issue of material fact arises as to that issue. *Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.29 265 (1986); *Leonard v. Dixie Well Service & Supply, Inc.*, 828 F.2d 291 (5th Cir. 1987); *Putman v. Insurance Co. of North America*, 673 F.Supp. 171 (N.D. Miss. 1987). An issue is genuine if "there is sufficient evidence favoring the nonmoving party for a fact finder to find for that party." *Phillips*, 812 F.2d at 273. A fact is material if it would "affect the outcome of the lawsuit under the governing substantive law." *Phillips*, 812 F.2d at 272.

The court notes that it has the discretion to deny motions for summary judgment and allow parties to proceed to trial so that the record might be more fully developed for the trier of fact. *Kunin v. Feofanov*, 69 F.3d 59, 61 (5th Cir. 1995); *Black v. J.I. Case Co.*, 22 F.3d 568, 572 (5th Cir. 1994); *Veillon v. Exploration Services, Inc.*, 876 F.2d 1197, 1200 (5th Cir. 1989).

IV.

In support of their motions for partial summary judgment, both Douglas and the Trustee rely heavily on a decision of the Mississippi Supreme Court, *Duggins v. Guardianship of Washington Through Huntley*, 632 So.2d 420 (Miss.1993). In this case, W. B. Duggins was employed by the parents of Maurice Washington, a minor, to prosecute a medical malpractice claim on his behalf. With the parents' consent, Duggins associated another attorney, Douglas Barfield, to assist in the representation. Duggins was to handle the client contact and do all the necessary "legwork" such as compiling medical records. Barfield was to use his experience in the area of medical malpractice to draft and file the complaint, as well as, to conduct negotiations with the insurance company for purposes of settling the claim. Although there was no written contract executed between Duggins and Barfield, they mutually agreed to equally divide any fees. Initially, a guardianship proceeding was filed for Washington, and his mother was designated as his guardian. Barfield, without the knowledge of Duggins, then commenced a series of deceitful acts that caused significant damages to the guardianship's ability to prosecute the malpractice claim. When the effects of these acts were ultimately revealed, the guardianship filed a chancery court proceeding seeking an accounting from both Duggins and Barfield. The chancery court entered a default judgment against Barfield, as well as, an award for punitive damages. The court found that Duggins' acts, standing alone, would not constitute grounds for punitive

5

damages. However, the court then determined that Duggins was vicariously liable for Barfield's conduct since Barfield's actions were within the scope of their partnership arrangement, and held that Duggins was also liable for punitive damages. *Duggins*, 632 So.2d at 422-25. Duggins appealed this decision to the Mississippi Supreme Court which affirmed in part and reversed in part. The court offered the following comments:

> The question at the heart of this case is whether an attorney who associates another attorney remains vicariously liable for the associated attorney's actions. The appellant Duggins asserts that the answer is no, claiming that his relationship with Barfield was that of an independent contractor, and as such, he is not liable for the actions of Barfield. The Guardianship, on the other hand, argues that Duggins remains vicariously liable for Barfield's actions according to partnership and joint venture law.
>
> An independent contractor is one who contracts to do work according to his own methods without being subject to the control of his employer except as to the results of the work. *Miss. Code Ann.* § 71-3-3(r) (1972). Consequently, the beneficiary of work performed by an independent contractor is not liable for acts or omissions of the contractor. *Webster v. Mississippi Publishers Corp.*, 571 So.2d 946, 951 (Miss. 1990); *Fruchter v. Lynch Oil Co.*, 522 So.2d 195, 199 (Miss. 1988). However, the key issue which needs to be analyzed between the parties is control.
>
> Duggins initiated Barfield's association in the case, not the guardians. The employment contract, executed by Mary and Willie, was with Duggins, not Barfield. The contract gave Duggins the power to associate whomever he wanted without having to get client consent. Therefore Barfield's participation in the case is solely attributed to Duggins. When Duggins associated Barfield, it was not as an independent contractor, but an equal....

*Id.* at 426.

In reaching its decision, the Mississippi Supreme Court relied significantly on partnership law, specifically the Uniform Partnership Act (UPA). Interestingly, the opinion contained the following quote:

> In applying the UPA to this case, Barfield's acts can be clearly imputed to Duggins. Barfield's misappropriation of the guardianship's funds was well within the scope of the partnership's business. Barfield's involvement was procured solely by Duggins, and they

agreed that any attorneys' fees would be split equally. Both attorneys had an equal stake in the case and depended upon each other's abilities in proceeding with the case. *Even if this Court did not choose to apply the UPA to this situation, Duggins could be found accountable for Barfield's actions by applying the principles of vicarious liability.* (emphases supplied)

In support of Duggins' argument against vicarious liability being applicable to this case, he relies on the case of *Idom v. Weeks & Russell*, 135 Miss. 65, 99 So. 761 (1924). In *Idom*, one partner shot an alleged burglar outside of the partnership's store. This Court held the innocent partner not liable for his partner's actions which were committed outside the scope of the partnership. While *Idom* remains good law, it is distinguished from the present case. In this case, Barfield's actions were committed *while in furtherance of the partnership and was certainly within the partnership business.* The handling of client funds is clearly within the realm of an attorney's representation of a guardianship in a legal action.

*Id.* at 427-28.

Contextually, the aforesaid quote is somewhat puzzling. The court indicated that even if it did not choose to apply the Uniform Partnership Act that Duggins could still be found accountable for Barfield's actions by applying the principles of vicarious liability. In the next paragraph the court then supports this position by stating that Barfield's actions were committed while in the furtherance of the partnership and within the partnership business.

In a more recent decision, *Barrett v. Jones, Funderburg, Sessums, Peterson and Lee, LLC,* 27 So.3d 363, 374-75 (Miss. 2009), the Mississippi Supreme Court discussed its earlier holding in *Duggins*. The court stated that *Duggins* was not solely based on a partnership theory, but also on Duggins' omissions and/or negligence in not recognizing the "red flags" that were apparent in Barfield's conduct.

This court has not overlooked the comment in the *Duggins* opinion regarding the definition of an independent contractor. The Supreme Court appropriately noted that a key component that needed to be analyzed in this definition was the element of "control." *See also,*

7

*Heirs and Wrongful Death Beneficiaries of Branning ex rel. Tucker v. Hinds Community College District*, 743 So.2d 311, 316 (Miss. 1999).

In the proceeding before this court, it is undisputed that Schwartz and/or Schwartz, P.A., employed Leonard to obtain bankruptcy court approval of the settlement that Schwartz had negotiated. Although the relationship between Schwartz, Schwartz, P.A., and Leonard may or may not have ripened into a partnership, this court is of the opinion that a more accurate picture of their business relationship could be developed for the court through additional discovery. The court would also refer the parties to *Hults v. Tillman*, 480 So.2d 1134, 1141-43 (Miss. 1985), which addresses in detail the distinction between a partnership and a joint venture. If it can be established, the latter concept could obviously have a significant impact on the resolution of these proceedings.

V.

This court has several other questions that should be addressed by the parties. Perhaps the most significant is whether an attorney, primarily responsible for handling a personal injury cause of action, has vicarious liability for the acts of a second attorney who has been employed as the agent of the first attorney, to perform an ancillary, but necessary, task to conclude the settlement of the personal injury cause of action? In *Entente Mineral Company v. Parker*, 956 F.2d 524 (5th Cir. 1992), the Fifth Circuit indicated that, under Mississippi Law, a law firm's vicarious liability for a partner's conduct is assessed under agency principles. Although the law firm was not found to be liable under the circumstances of the case, the court offered the following guidance:

8

Section 219 of the Restatement (Second) of Agency discusses the circumstances in which a master or principal is liable for the torts of his servant or agent. Subsection (1) of § 219 provides that a principal or master is vicariously liable for the torts of his agent or servant that are committed within the scope of employment. RESTATEMENT (SECOND) OF AGENCY § 219(1) (1958). An agent or employee's conduct is within the scope of employment only if

(a) it is of the kind he is employed to perform;

(b) it occurs substantially within the authorized time and space limits:

(c) it is actuated, at least in part, by a purpose to serve the master, and

(d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.

RESTATEMENT (SECOND) OF AGENCY § 228 (1958). Section 228 of the Restatement, which the Mississippi Supreme Court adopted in *Sears Roebuck & Co. v. Creekmore*, 199 Miss. 48, 23 So.2d 250, 251 (1945), clearly requires that, in order to be within the scope of employment, the agent's conduct must be actuated, at least in part, by a purpose to serve the master.

Subsection (2) of § 219 lists four situations in which conduct that fails to satisfy the "within the scope of employment" test found in § 228, may still provide a basis for imposing vicarious liability. Subsection (2) provides in part that

> (2) A master is not subject to liability for the torts of his servants acting outside the scope of employment, unless:
>
> . . . .
>
> > (d) the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation.

Thus, under the Restatement, a principal is liable for the torts of his agent if the agent commits the tort while acting within the scope of his employment as defined by § 228, or if § 219(2) applies. The situations listed in § 219(2) are not necessarily exceptions to the scope of employment doctrine, but rather situations in which courts have decided to impose liability on the principal or employer even if the agent's conduct does not meet all of the traditional "within the scope of employment" criteria.

Section 261 is an extension of § 219(2)(d), and states that

9

> A principal who puts a servant or other agent in a position which enables the agent, while apparently acting within his authority, to commit a fraud upon third persons is subject to liability to such third persons for the fraud.

Comment a to § 261 states that

> The principal is subject to liability under the rule stated in this section although he is entirely innocent, has received no benefit from the transaction, and as stated in Section 262, although the agent acted solely for his own purposes.

Unlike § 228, § 261 assesses vicarious liability even though the agent's conduct was not actuated by a purpose to serve the principal. Although Mississippi case law has not expressly differentiated between the two types of vicarious liability found in § 219(1) and § 219(2) of the Restatement, the distinction is implicit. Hence, cases imposing liability under the theory embraced by § 219(1) and defined in § 228, require the agent's conduct to be for the principal's purposes; while other cases, under the theory embodied in §§ 219(2)(d) and 261, allow liability even when an agent acts solely for his own purposes. *Compare Seedkem South Inc. v. Lee*, 391 So.2d 990, 995 (Miss. 1980) *with Billups Petroleum Co. v. Hardin's Bakeries Corp.*, 217 Miss. 24, 63 So.2d 543 (1953) *and Napp v. Liberty National Life Insurance Co.*, 248 Miss. 320, 159 So.2d 164 (1963).

*Id.* at 526-27.

For additional guidance, the court would point the parties to the Restatement (Second) of Agency, ch. 7, topic 2, § 219, § 228, § 261, and § 262 (1958); as well as, to the Restatement (Third) of Agency, ch. 2, topic 3, § 2.04 and ch. 7, topic 2, § 7.05 (2006). The potential applicability of the principles of agency should be explored by all of the parties to these proceedings.

Since it was also mentioned in the parties' memoranda, the court also has questions about the nature of any conversations, correspondence, or communications that might have existed between Leonard and Douglas, as well as, Leonard and the Trustee. Would these communications, if any, have any bearing on or alter the nature of the relationship between Douglas and Schwartz, P.A., or Schwartz?

VI.

While the *Duggins* decision will likely play a role in the resolution of these proceedings, it is clearly not the only theory of law that is relevant. The court instructs the parties to address the potential agency relationship that might have existed between Schwartz, Schwartz, P.A., and Leonard, as well as, its application to the factual circumstances underpinning these proceedings.

At this point, the court finds that there are material issues of fact <u>potentially</u> remaining in dispute. This necessitates a more thorough development of the legal relationship that existed between Leonard and Schwartz and/or Schwartz, P.A., as well as, whether that relationship was implicated by communications, if any, that may have occurred between Leonard and Douglas and/or Leonard and the Trustee.

The motions for partial summary judgment are not well taken at this time, and both will be overruled <u>without prejudice</u>. A separate order will be entered consistent with this opinion contemporaneously herewith.

This the 2nd day of March, 2011.

/s/ David W. Houston, III
DAVID W. HOUSTON, III
UNITED STATES BANKRUPTCY JUDGE